IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Derrick DL Brunson,<br><br>Plaintiff,<br><br>v.<br><br>Cpl. Justin Hardee; Lt. Andrew Clendenie; Alvin Worsley; Cpl. Leonard Johnson; Keith Lutcken; Donny Taylor; Darrin Yarborough; T. Porter; Florence County Sheriff's Office; Lt. Alvin Powell,<br><br>Defendants. | Case No. 4:23-cv-01845-JDA<br><br>**OPINION AND ORDER** |

This matter is before the Court on Defendants' motion for summary judgment. [Doc. 72.] In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2), D.S.C., this matter was referred to United States Magistrate Judge Kaymani D. West for pre-trial proceedings.

On January 23, 2026, the Magistrate Judge issued a Report and Recommendation ("Report") recommending that the summary judgment motion be granted. [Doc. 90.] The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. [*Id.* at 29.] On March 6, 2026, Plaintiff filed objections to the Report [Doc. 101], on March 12, 2026, Defendants filed a reply to Plaintiff's objections [Doc. 102], and on April 29, 2026, Plaintiff filed a supplement to his objections [Doc. 104]. For the reasons stated herein, the Court stays this action and denies Defendants' motion with leave to refile.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a de novo determination of only those portions of the Report that have been specifically objected to, and the Court may accept, reject, or modify the Report, in whole or in part. 28 U.S.C. § 636(b)(1). The Court will review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" (internal quotation marks omitted)).

## BACKGROUND

The Magistrate Judge accurately summarized the factual background of this case as follows:

> At the time of the filing of this action, Plaintiff was a pretrial detainee awaiting trial on murder charges. After one trial resulted in a hung jury, Plaintiff was ultimately convicted of murder in the summer of 2025. This case stems from the actions of the police officers and employees of the coroner's office who arrived at Plaintiff's residence on May 21, 2021 after Plaintiff called 911 requesting EMS assistance for his partner, Katelyn Shippnick, who Plaintiff reported had been shot in the head. Plaintiff does not refute this fact. Defendants filed the audio recording of the 911 phone call placed by Plaintiff on that day. During that phone call, Plaintiff tells the dispatch operator, "I think someone shot my girlfriend." Though the sound quality makes the call difficult to hear, when the operator asks why he believed she had been shot, Plaintiff stated that she had a hole in her head. It

was this phone call, made by Plaintiff, that resulted in law enforcement arriving at his residence.

The following information is derived from the testimony of Lieutenant Chris Owens during Plaintiff's first trial held during the week of July 8, 2024, who at the time of the incident was employed as an investigator with the Florence County Sheriff's Office ("FCSO"). While this trial ultimately ended in a hung jury, the testimony under oath during this trial is relevant to Plaintiff's allegations. Neither party disputes this fact, and both parties cite[] to the trial testimony to support their arguments. Owens testified that on the day he heard "the call go out on the radio," he had just passed Pine Court Circle, the location of Plaintiff's residence.

Owens was the first officer on the scene. Lt. Owens encountered Plaintiff, who he recalls was very excited and was telling him to come and help her (referring to Ms. Schippnick). Owens testified that Plaintiff led him into the residence, a mobile home, to a small bathroom where Owens saw a female lying on her back. Plaintiff does not refute the fact that he led Owens to the back of the home where the victim was located. Owens testified that Plaintiff began attempting life-saving measures on the female, though it was not the proper way to perform CPR. Owens was of the opinion that the female was already deceased, based on the visual of her body, including her color and the fact that he did not see her chest rising and falling. Owens still attempted to offer aid, and at this point, another officer, Leonard Johnson, arrived on the scene. Plaintiff acknowledges that Johnson arrived at the scene, eventually escorting Plaintiff out of the residence. Both officers tried to gently speak to Plaintiff and ask him to step aside; however, he did not initially step to the side. Eventually, Johnson was able to escort Plaintiff out of the room while Owens checked for the victim's pulse. At approximately the same time, the coroner, Mr. Lutcken, arrived.

Lutcken testified that Plaintiff was making the statement that someone had shot his wife when he arrived at the residence; however, while he noticed multiple abrasions and contusions on Ms. Schippnick's body, he did not see anything resembling a gunshot wound. Owens testified that Plaintiff never asked the officers to leave the residence; rather, he was continually asking them what they were doing to help the victim, and where was the ambulance. Plaintiff does not deny that he made these statements.

> Based on the information initially provided by Plaintiff when he placed the 911 call, that there was an individual with a gunshot wound, officers were under the belief that they were responding to a potential crime scene. Johnson began a crime scene log at the instruction of Captain Yarborough. Corporal Justin Hardee testified that when he arrived, he met with everybody and began taking pictures of the outside of the residence and proceeded to go inside to document the inside of the residence. Hardee testified that in "open view" inside the residence was dried blood on some areas on the walls of the residence. Hardee testified that the items that were removed from the home included a hammer that was found in the hallway. Officer Alvin Worsley testified that when he arrived, there were three young children at the residence. While the officers on the scene removed Plaintiff from the residence so they could perform their investigation, he was not under arrest at any point in time while they were responding to the phone call. Worsley testified that while he was at the scene, he made contact with Plaintiff, who was sitting outside next to a Ford Flex truck. He informed Plaintiff that they would need him to come to the FCSO to give a statement for the record, and Plaintiff agreed. Based on Plaintiff's demeanor, described by Worsley as having "different episodes," the officers decided to personally transport Plaintiff to the police station for his statement, and he was placed in handcuffs. Several days later, Plaintiff was arrested for the murder of Ms. Schippnick.

[Doc. 90 at 2–5 (footnotes and record citations omitted).[1]]

Plaintiff's Complaint asserts claims pursuant to 42 U.S.C. § 1983 for violations of his Fourth, Fifth, and Fourteenth Amendment rights when Defendants entered his home, searched it and seized items without a warrant, and then seized Plaintiff without a warrant. [Doc. 1 at 8, 10, 12, 14, 16, 18, 20, 22–23, 25–27.] He also asserts state law claims for

---

[1] Plaintiff generally does not object to the Report's factual recitation. [*See generally* Doc. 101.] However, he does assert that at least two facts differ from the Report's recitation: Plaintiff contends the children had been removed from the home before the officers arrived [*id.* at 3] and that Schippnick's death was considered a suicide until May 27, 2021 [*id.* at 8–9]. Neither of these factual disputes is material to the Court's determination that this action should be stayed.

false arrest/imprisonment and negligent supervision. [*Id.* at 11, 20, 25–28.] Plaintiff seeks declaratory and injunctive relief, damages, and attorney's fees and costs. [*Id.* at 11, 27, 36–38.]

**DISCUSSION**[2]

The Magistrate Judge recommends that Defendants' motion for summary judgment be granted. [Doc. 90.] With respect to Plaintiff's claim that his Fourth Amendment rights were violated when Defendants entered and searched his home without a warrant and then unlawfully seized evidence from the home, the Magistrate Judge first concluded that this claim is barred by collateral estoppel. [*Id.* at 7–8.] Then, the Magistrate Judge considered the merits of that claim and determined that the search and seizure did not violate the Fourth Amendment because the officers lawfully entered the home with Plaintiff's consent and based on exigent circumstances and then lawfully seized evidence that was in plain view within the home. [*Id.* at 8–16.] With respect to Plaintiff's claim that he was unlawfully seized, the Magistrate Judge concluded that Plaintiff's assertion that he did not feel free to leave of his own free will was illogical and that the officers' decision to transport Plaintiff in a manner geared toward his safety and the safety of others was reasonable and supported by probable cause under the circumstances. [*Id.* at 17–20.] The Magistrate Judge further determined that this claim is barred by collateral estoppel. [*Id.* at 20–21.] As to Plaintiff's allegations regarding violations of his Fifth and Fourteenth Amendment rights, the Magistrate Judge noted that any claim under those Amendments "appears to simply be a restatement of his Fourth

[2] The Magistrate Judge accurately summarized the relevant summary judgment standard. [Doc. 90 at 5–6.] Accordingly, the Court does not repeat the summary judgment standard.

Amendment claim." [*Id.* at 21 n.13.] The Magistrate Judge also concluded that Defendants are entitled to Eleventh Amendment immunity in their official capacities; that they are entitled to qualified immunity; that Plaintiff cannot establish a claim for bystander liability against Porter, Yarborough, Worsley, Powell, Clendenin, and Hardee; that Plaintiff cannot establish a claim for supervisory liability against Yarborough, Worsley, Powell, Clendenin, and Taylor; and that Defendants are entitled to summary judgment on Plaintiff's state law claims. [*Id.* at 21–28.]

Plaintiff filed a 41-page objection memorandum, raising various objections to the Magistrate Judge's conclusions. [Doc. 101.] Upon review of the record, the Court concludes that this action should be stayed pursuant to the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971).[3]

Under *Younger*, "federal courts should abstain from exercising jurisdiction to consider matters related to ongoing state criminal proceedings." *Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 93 (4th Cir. 2022). Federal courts should abstain "where granting the requested relief would require adjudication of federal constitutional issues involved in the pending state action." *Traverso v. Penn*, 874 F.2d 209, 212 (4th Cir. 1989). It is widely accepted that a defendant in a state criminal prosecution has an adequate remedy outside of federal proceedings because he can litigate constitutional claims in defending

[3] Although the parties have not raised *Younger* abstention, the Court may raise the issue and stay the case sua sponte. *Bellotti v. Baird*, 428 U.S. 132, 143 n.10 (1976) ("[I]t would appear that abstention may be raised by the court [s]ua sponte."); *Watkins v. Muhammad*, No. 24-1738, 2024 WL 4524525 (7th Cir. Oct. 18, 2024) (affirming the district court's sua sponte stay of a case under *Younger*); *Sanchez v. Wells Fargo Bank, N.A.*, 307 F. App'x 155, 157 (10th Cir. 2009) (holding that federal courts have authority to address application of *Younger* abstention sua sponte); *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 643 n.6 (D. Md. 2015) ("District courts may raise the issue of abstention *sua sponte*.").

against the state prosecution. *See Nivens v. Gilchrist*, 444 F.3d 237, 241 (4th Cir. 2006). Exceptions to *Younger* abstention apply only where "(1) there is a showing of bad faith or harassment by state officials responsible for the prosecution; (2) the state law to be applied in the criminal proceeding is flagrantly and patently violative of express constitutional prohibitions; or (3) other extraordinary circumstances exist that present a threat of immediate and irreparable injury." *Id.* (internal quotation marks omitted).

Where, as in this case, "a party seeks not only injunctive and declaratory relief but money damages as well, . . . the appropriate course is to abstain by staying proceedings on monetary as well as injunctive and declaratory claims." *Adams Outdoor Advert. Ltd. P'ship v. Beaufort County*, 105 F.4th 554, 560 (4th Cir. 2024) (internal quotation marks omitted); [*see* Doc. 1 at 11, 27, 36–38 (Complaint, seeking declaratory and injunctive relief and damages)]. Moreover, the federal proceedings should be stayed "pending ultimate termination of the state prosecution, including any relevant state collateral review proceedings, whether by adjudication on the merits or by a decision of the state at any point to abandon or forego the prosecution." *Traverso*, 874 F.2d at 213; *see also Vick El v. Carmean*, 737 F. App'x 167 (4th Cir. 2018) (vacating summary judgment in a § 1983 action and remanding for an order staying further proceedings pending ultimate termination of a state prosecution, including "any relevant state collateral review proceedings, whether by adjudication on the merits or by a decision of the state at any point to abandon or forego the prosecution").

Here, as the Magistrate Judge noted, Plaintiff was convicted after a jury trial in September 2025, and he has since appealed.[4] [Doc. 90 at 2 n.3.] Plaintiff is asking this Court to make determinations that substantially overlap with issues to be resolved in the state court proceedings.[5] As such, proceeding with this case in federal court would result in simultaneous litigation of the same issues such that this Court's ruling would interfere with the pending state court proceedings. Further, a determination by the state court that the search and seizures were lawful would be binding on this Court and may preclude Plaintiff from asserting his § 1983 claims.[6] Moreover, none of the exceptions to *Younger*

[4] On September 19, 2025, Plaintiff filed a notice of appeal with the South Carolina Court of Appeals, and the appeal remains pending. *See State v. Brunson*, No. 2025-001937 (S.C. Ct. App.), available at South Carolina Appellate Case Management System, https://ctrack.sccourts.org/public/caseSearch.do (search by Appellate Case No. "2025-001937") (last visited September 11, 2026); *see also Phillips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (explaining that courts "may properly take judicial notice of matters of public record"); *Colonial Penn Ins. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that the most frequent use of judicial notice is in noticing the content of court records." (internal quotation marks omitted)).

[5] Indeed, the record establishes that the first trial court specifically addressed the entry into the home and the seizure of blood swabs from the home. [Doc. 72-10 at 39–40 (107:8–108:17).] And the parties' filings suggest that the first trial court addressed the seizure of Plaintiff [Docs. 78 at 30; 102 at 4] and that the second trial court addressed at least some of the issues raised in this case [Doc. 101 at 13].

[6] The Court notes that Plaintiff appears to challenge the Magistrate Judge's determination that his claims are barred by collateral estoppel. [Doc. 101 at 13–14.] The Magistrate Judge concluded that, because the first trial judge ruled on a motion to suppress that the search and seizures were lawful, collateral estoppel applies to preclude Plaintiff from raising the claims in this action. [Doc. 90 at 7–8, 20–21.] However, as noted, Plaintiff's first trial resulted in a hung jury. And, the Supreme Court of South Carolina "has repeatedly emphasized that, when a mistrial is granted, the parties must relitigate any prior rulings or matters inextricably linked to the trial itself," including "motions to suppress evidence." *State v. Dennis*, 926 S.E.2d 250, 254 (S.C. 2026). Although Plaintiff contends that the second trial judge took under advisement whether the entry, search, and seizures were lawful and ruled in favor of Plaintiff with regard to Hardee [Doc. 101 at 13], nothing in the record before the Court *establishes* how the second trial judge ruled on the issues

abstention is applicable in this case. Accordingly, because this Court would be required to adjudicate federal constitutional issues involved in the pending state action, the Court exercises its discretion to stay proceedings in this action pending ultimate termination of the state prosecution in accordance with *Traverso*.

**CONCLUSION**

Based upon the foregoing, the Court rejects the Report and Recommendation of the Magistrate Judge, STAYS this action pending ultimate termination of the state prosecution, and DENIES Defendants' motion for summary judgment [Doc. 72] with leave to refile after the stay is lifted. This matter is recommitted to the Magistrate Judge for further proceedings, and the parties are directed to file a report regarding the status of the state court appeal every 90 days and/or within 10 days of a decision by the South Carolina Court of Appeals.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

September 14, 2026
Florence, South Carolina

---

relevant to this action [*see* Doc. 104 (Plaintiff's supplement to his objections, questioning whether the Court should review the transcript from the second trial)]. Thus, based on the current record, the Court is unable to determine whether collateral estoppel precludes Plaintiff from litigating the claims in this § 1983 action. *See Meyer v. McGowan*, No. 2:16-cv-00777-RMG, 2018 WL 4300121, at *2 (D.S.C. Sept. 10, 2018) (recognizing that "federal courts use state law to determine preclusion where the prior judgment was from a state proceeding" and that, under South Carolina law, "the party asserting collateral estoppel must show that the issue of fact or law in the present lawsuit was: (1) actually litigated in the prior action; (2) directly determined in the prior action; and (3) necessary to support the prior judgment" (internal quotation marks omitted)).